Cecilia GARZA, Plaintiff,

v.

DEAF SMITH COUNTY, Defendant.

Civ. A. No. CA–2–81–42.

United States District Court,
N.D. Texas,
Amarillo Division.

May 24, 1984.
Consent Decree March 18, 1985.

Debra Smith, Texas Rural Legal Aid, Hereford, Tex., Joe K. Crews, Law Offices of James C. Barber, Dallas, Tex., for plaintiff.

A.W. SoRelle III, Janet L. King, Underwood Law Firm, Amarillo, Tex., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY LOU ROBINSON, District Judge.

**Introduction**

This employment discrimination lawsuit was originally filed by Abel Villarreal, alleging violations of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e *et seq.*], 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Cecilia Garza subsequently intervened.

On October 25, 1983, the Court held a hearing on Plaintiffs' Motion for Class Certification. On November 8, 1983, the Court certified a class under Fed.R.Civ.P. 23(b)(2) consisting of:

All Hispanics who, since March 6, 1979 have applied for and been denied employment with Deaf Smith County.

Since the original plaintiff, Abel Villarreal, did not possess the same interest and had not suffered the same injury as had the members of the certified class, his claims were severed, pursuant to Fed.R. Civ.P. 21, and assigned Civil Action No. 2–84–22. That action is still pending.

Subsequent to certification, Cecilia Garza's sister, Rosa Garza, twice moved to intervene. For different reasons, each motion to intervene was denied.

On April 30, 1984, the Court held a Phase I trial on the issue of liability. This constitutes the Court's Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

*Cecilia Garza*

1. Plaintiff Cecilia Garza is an Hispanic female citizen of the United States and a resident of Hereford, Deaf Smith County, Texas.

2. On January 8, 1982, the following classified ad appeared in *The Hereford Brand:*

Secretary for typing and bookkeeping. Contact Eva at Sheriff's office for application and interview. Equal Opportunity Employer.

3. In response to the ad, Ms. Garza went to the Deaf Smith County Sheriff's Office and told the woman who came to assist her that she was there to apply for the job that was advertised in the newspaper. She did not ask for Eva as instructed in the ad.

4. The woman in the sheriff's office took Ms. Garza's name and telephone number, and told her that she would be contacted. Ms. Garza left. She never received any telephone call or other contact from the sheriff's office.

5. A few days later, Ms. Garza saw the same ad appear again in the newspaper. She returned to the Sheriff's Office and asked about the status of her application. She was told that the job had been filled. The person who had been hired was white.

6. Ms. Garza subsequently filed a charge of discrimination with the United States Equal Employment Opportunity Commission and was later issued a right-to-sue notice.

*Deaf Smith County*

7. Defendant Deaf Smith County is a political subdivision of the State of Texas. Its authority is derived from the Texas Constitution and from state laws.

8. The County performs a variety of functions, including enforcing state laws within its boundaries, assessing and collecting taxes, conducting general and special elections, providing necessary court facilities, keeping real property and other official records, constructing and maintaining county roads and bridges, and providing library services.

9. Each county function is directed by elected or appointed county officials whose duties are established by law. Many functions relating to the general operation of the county are supervised by the Commissioner's Court. For other functions, an elected official may be directly responsible to state officials.

10. The Commissioner's Court of Deaf Smith County is comprised of the County Judge and one commissioner from each of four precincts.

11. Each of the four precincts, the County Judge's office, and several other county departments have their own supervisory personnel and operate, by and large, independently of each other.

12. Neither the County nor any of its departments, through mid-1983, had any written policy or procedures regarding hiring of new employees or any written job descriptions. All hiring was solely at the discretion of each department head. The County had no person in charge of hiring.

13. From at least 1964 through mid-1983, all of the County's officials and department heads were white. In approximately August, 1983, an Hispanic Sheriff was appointed.

*Statistical Analysis of Hiring*

14. Both Plaintiff's and Defendant's statistical experts are in agreement on a key feature of this case: when viewed in the aggregate, the success rate of Hispanic applicants to Deaf Smith County's various offices and departments is 2.7 plus standard deviations less than expected for the 1979–84 period.

15. Where the statistical experts diverge is whether the County's hiring should be viewed on a department-by-department basis or in the aggregate. Broken down by department for the 1979–84

period, only three departments—Building Maintenance, Social Services, and the Sheriff's Office—reflect Hispanic success rates more than 2 standard deviations less than expected. Together, these three departments accounted for approximately one-third (50 of 151) of the new hires during the 1979–84 statistical period. The County contends that when the remaining 101 hires are distributed over the remaining 15 departments, the statistics reflect no adversity against Hispanics for the five-year statistical period (January 1, 1979, to March 31, 1984).

16. The County also contends that when the success rate of Hispanic applicants for particular job categories is compared to the 1980 census data showing the distribution of relevant skills among the Hispanic population of Deaf Smith County, no statistically significant adverse impact on Hispanics appears. (The labor market analysis.)

## CONCLUSIONS OF LAW

*Jurisdiction*

1. This Court has jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(f)(3).

*Class Claims*

2. Plaintiffs have brought this action under the disparate treatment theory of recovery. Under the disparate treatment theory, the Title VII plaintiff must prove the existence of a pattern and practice of race discrimination. *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). To succeed in a disparate treatment case, a plaintiff must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts." *Id.* at 336 & n. 16, 97 S.Ct. at 1855 & n. 16. She must "establish by a preponderance of the evidence that racial discrimination was the [County's] standard operating procedure—the regular rather than the unusual practice." *Id.* In a disparate treatment case discriminatory intent must be established by either direct or circumstantial evidence. *Id.* at 335 n. 15, 97 S.Ct. at 1854 n. 15; *Wheeler v. City of*

*Columbus*, 686 F.2d 1144, 1150 (5th Cir. 1982).

3. Since the County's hiring decisions rely on subjective selection criteria, it is appropriate to analyze them under the disparate treatment theory. *Pegues v. Mississippi State Employment Service*, 699 F.2d 760, 765 (5th Cir.), *cert. denied*, — U.S. ——, 104 S.Ct. 482, 78 L.Ed.2d 679 (1983); *Pouncy v. Prudential Ins. Co.*, 668 F.2d 795 (5th Cir.1982).

4. Under the disparate treatment analysis, a Title VII plaintiff may establish a prima facie case of disparate treatment using statistics alone if the statistics show a "gross disparity" in the treatment of applicants based on discriminatory factors such as race. *Hazelwood School District v. United States*, 433 U.S. 299, 307–08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977); *Carroll v. Sears Roebuck & Co.*, 708 F.2d 183, 190 (5th Cir.1983). Gross statistical disparities, standing alone, may justify an inference of discriminatory motive. *Id.* However, if the statistical disparity shown by the plaintiff's evidence is insufficient alone to establish a prima facie case of disparate treatment, a Title VII plaintiff "may get over his or her hurdle by combining statistics with historical, individual, or circumstantial evidence." *Payne v. Travenol Laboratories*, 673 F.2d 798, 827 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982); *Carroll*, 708 F.2d at 190. In order to rebut a prima facie case of disparate treatment, the defendant must discredit the plaintiff's evidence or provide a nondiscriminatory explanation for the apparently discriminatory result. *Id.*

5. For purposes of this case, a disparity in the number of Hispanic applicants hired is statistically significant if the difference between the expected number of Hispanic applicants hired exceeds the actual number by more than two or three standard deviations. *See Castaneda v. Partida*, 430 U.S. 482, 496–97 n. 17, 97 S.Ct. 1272, 1281 n. 17, 51 L.Ed.2d 498 (1977); *Hazelwood*, 433 U.S. at 311 n. 17, 97 S.Ct. at 2743 n. 17.

6. The first difficulty in interpreting the statistics in this case is whether the County is correct in its assertion that its various departments should be viewed individually. The Fifth Circuit considered an analogous situation in *Wheeler v. City of Columbus*, 686 F.2d 1144, 1151 (5th Cir.1982). There, the district court, sua sponte, had divided the City into 23 departments for purposes of analyzing the employment discrimination claims. The Fifth Circuit faulted this procedure, noting that "[n]either Wheeler nor the City had attached any significance at trial to these twenty-three job classifications, which had been created by the City only for payroll purposes." *Id.* In remanding the case, the Fifth Circuit stated that "the district court should ascertain whether some of [the job] classifications belong in bona fide departments and also consider the statistics in those classifications as part of Wheeler's overall prima facie case." *Id.* at 1152. Here, the County has attached significance to its various departments and Plaintiffs have not introduced any evidence suggesting that the departments are not in fact bona fide.

7. The County's assertion that its various departments operate independently of each other with respect to hiring is bolstered by the applicable state law. Tex. Rev.Civ.Stat.Ann. art. 3902 provides, in relevant part, that "in no case shall the Commissioner's Court or any member thereof attempt to influence the appointment of any person as deputy, assistant, or clerk in any office." Texas courts have consistently found that county commissioner's courts do not have any power over who is selected to assist in county offices. *See, e.g., Renfro v. Shropshire*, 566 S.W.2d 688 (Tex.Civ. App.—Eastland 1978, writ ref'd n.r.e.); *Tarrant County v. Smith*, 81 S.W.2d 537 (Tex.Civ.App.—Fort Worth 1935, writ ref'd); *Neeper v. Stewart*, 66 S.W.2d 812 (Tex.Civ.App.—Eastland 1933, writ ref'd).

■ 8. The Court concludes that there is "substantial hiring autonomy" in each department and that the County's hiring practices should be analyzed on a department-by-department basis. Nonetheless, the hiring statistics for all the departments may be considered in the aggregate for purposes of establishing Plaintiffs' prima facie case. *Wheeler*, 686 F.2d at 1152–53.

■ 9. The Court finds that Plaintiffs' applicant flow analysis, as exemplified by Plaintiff's Exhibits 6–8, is persuasive and establishes a sufficiently gross disparity to justify an inference of discriminatory motive, thus establishing Plaintiffs' prima facie case.

10. The County's principal attack on Plaintiff's statistical case consists of Dr. Lewin's labor market comparison. By comparing required job skills with 1980 census data regarding the distribution of these skills among the Hispanics of Deaf Smith County, Dr. Lewin concludes that the County's hiring practices have no adverse impact on Hispanics. This approach is consistent with the Supreme Court's requirement that "the relevant labor pool be tailored to eliminate those whose exclusion from the positions in issue could be attributed to want of the requisite skills." *Rivera v. City of Wichita Falls*, 665 F.2d 531, 540 (5th Cir.1982).

11. The Fifth Circuit has commented that:

A prima facie case may ... be shown without evidence of qualifications where the inference of discrimination is supported by a compelling level of minority underrepresentation in a sizeable workforce. In such a case, the burden of proving lack of qualifications is on the [employer].

*Id.* at 541 n. 16; *United States v. Hayes International Corp.*, 456 F.2d 112, 120 (5th Cir.1972). Plaintiffs assert that the census data is inaccurate because the census substantially undercounts Hispanics and because the census statistics analyzing the population by job skill included in each skill category only people actually employed in those skill categories. People qualified for, but not employed in, such positions were omitted from the statistics quantifying the proportion of the population eligible for the type of employment in question. In considering identical objec-

tions in another Title VII case, the Fifth Circuit stated:

> These are not insignificant defects. The Plaintiffs did not, however, produce any other, more reliable, statistics on the number and qualifications of Mexican-Americans in either the state or national labor markets.

*Rivera,* 665 F.2d at 544 n. 19. The Court finds that the County's census statistics are probative of the distribution of job skills among Hispanics in Deaf Smith County.

12. The Court is not persuaded that Dr. Lewin's labor market analysis constitutes an adequate nondiscriminatory explanation of the County's apparently discriminatory hiring practices for three reasons. One, Dr. Lewin made no effort to correlate his labor market analysis with the skills actually required by the jobs. He based his analysis on Plaintiff's expert's disaggregation of applicant flow data into EEO–1 categories. (Plaintiff's Class Certification Hearing Exhibit 13–E). This breakdown into EEO–1 categories, however, was guesswork based upon job titles. Plaintiff's expert did not draw upon any material reflecting what job skills were actually required. Class Certification Hearing Tr. at 98–99.

13. Two, the County did not introduce any evidence on either a job-by-job or department-by-department basis as to what skills were actually required of persons hired by the County during the five-year statistical period. Without such evidence, the Court is unable to conclude that the jobs at issue here involve skills not generally possessed or readily acquired by the general population. *See Hazelwood,* 433 U.S. at 308 n. 13, 97n S.Ct. at 2742 n. 13; *Boykin v. Georgia-Pacific,* 706 F.2d 1384, 1392–93 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 999, 79 L.Ed.2d 231 (1984).

14. Three, several of the County's departments encompass jobs which plainly involve skills generally possessed or readily acquired by the general population, e.g.,

building maintenance and road and bridge work.

15. The County also asserts that an applicant flow analysis in this case is inherently biased because the percentage of Hispanic applicants to the County greatly exceed the percentage of Hispanics in the County's general population. The County attributes this disproportion to the higher Hispanic unemployment rate. The Court rejects this argument for two reasons. One, the County's suggestion that its Hispanic applicant pool has been bloated by the Hispanic unemployment rate is sheer speculation. The County introduced no evidence of the percentage of its Hispanics applicants who were unemployed at the time they applied or of the relative proportion of unemployed Hispanics and non-Hispanics applying.

16. Two, the argument only has force if it suggests that the distribution of relevant job skills is different in the Hispanic and non-Hispanic applicant pools, i.e., that the higher Hispanic unemployment rate has produced a large number of unskilled, unqualified Hispanic applicants. No such evidence was introduced.

17. The Court finds that the hiring policies and practices at issue in this case were of sufficient frequency and duration as to warrant a finding that the Commissioner's Court knew that these policies and practices were customary among County employees making hiring decisions. *See Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir.1984) (en banc).

18. The Court finds that Defendant Deaf Smith County discriminated against the class on the basis of race and national origin in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 in hiring for the following departments: Sheriff's, Social Services, Building Maintenance, and County Commissioner Precinct No. 3.

*Garza's Individual Claim*

19. To establish her individual claim, analyzed as a disparate treatment violation, Ms. Garza must show: (1) membership in a minority group; (2) an applica-

tion for an open job for which she was qualified; (3) rejection; and (4) the County hired a non-minority for the job. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Page v. U.S. Industries,* 726 F.2d 1038, 1055 (5th Cir.1984).

20. Ms. Garza is a member of the minority group of Hispanics. For the reasons indicated in the Class Certification Order of Nov. 8, 1983, pp. 3–4 (*"Garza as an Applicant"*), the Court concludes that she applied for an open job in the Sheriff's Department of Deaf Smith County. (Not mentioned in that Order, although significant, is Eva McKnight's insistence that there were Hispanic applicants for the job, even though the County was unable to produce a single written application bearing an Hispanic surname. Class Certification Hearing Tr. at 168–70.) She was not hired for the job and the County hired a non-minority to fill the position.

21. The remaining element of Ms. Garza's prima facie case is whether she was qualified for the job she applied for. She "is not required to prove that [s]he was the *most* qualified applicant for the position, but only that [her] background was such that [she] was at least presumptively qualified for the job [she] sought." *Wright v. Western Electric,* 664 F.2d 959, 964 (5th Cir.1981) (emphasis in original); *East v. Romine, Inc.,* 518 F.2d 332, 338 (5th Cir. 1975). Although some circuits have held that a summary refusal to consider an applicant is dispositive on the question of qualifications, *see Ostroff v. Employment Exchange,* 683 F.2d 302, 304 (9th Cir.1982); *Nanty v. Barrows Co.,* 660 F.2d 1327, 1332 (9th Cir.1981); *EEOC v. Ford Motor Co.,* 645 F.2d 183, 188 n. 3 & 198–99 (4th Cir. 1981), *rev'd on other grounds,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the Fifth Circuit has suggested that such a refusal is only evidence that a preferred nondiscriminatory reason is pretextual. *Wheeler,* 686 F.2d at 1153–54.

22. The Court finds that Ms. Garza was qualified for the position for which she applied. She had previous training in typing, shorthand and bookkeeping, and had worked as a secretary on several previous occasions. The County has not presented any evidence that qualifications other than those encompassed by the generic term "secretary" were required for this job. As noted before, there were no written job descriptions. Ms. Garza's background certainly made her at least presumptively qualified.

23. Once the plaintiff establishes a prima facie case, the defendant must show nondiscriminatory reasons for its employment decision. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981).

24. The single nondiscriminatory reason advanced by the County is that Ms. Garza never applied for the job. The Court finds this reason pretextual because (1) Ms. Garza applied for the job, (2) the County summarily refused to follow up on her application, (3) the County had no written applications from any of the Hispanic applicants for the job, and (4) the statistical evidence shows a pervasive pattern of discriminatory hiring practices by the County.

25. The Court finds that the hiring policies and practices at issue in this case were of sufficient frequency and duration as to warrant a finding that the County Sheriff knew that these policies and practices were customary among Sheriff's department employees making hiring decisions. *See Bennett,* 728 F.2d at 765 n. 1 & 768.

26. The Court finds that Defendant Deaf Smith County discriminated against Plaintiff Cecilia Garza on the basis of race and national origin in violation of Title VII and 42 U.S.C. §§ 1981 & 1983.

*Further Proceedings*

27. The Court's findings in favor of Plaintiff bring this case into Stage II. *See Boykin,* 706 F.2d at 1394; *James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 354–59 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Baxter v. Savannah Sugar Refining Corp.,* 495 F.2d 437, 443–44 (5th Cir.1974),

*cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).

28. Each party is directed to submit a statement of what further proceedings are believed necessary and a proposed remedial decree by Monday, June 25, 1984. With regard to a proposed remedial decree, since counsel for the respective parties, because of their particularized knowledge about the case, are always in a far better position than the Court to evaluate and accommodate the parties' respective interests, the Court urges the Plaintiffs and the County to reach some agreement on the form of the remedial decree. While the Court recognizes that the County has vigorously contested its liability, agreement may be reached on the form of a remedial decree without any agreement on, or waiver of a party's right to contest, the propriety on entering such a decree. As the Supreme Court has said, "[i]n enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement." *Carson v. American Brands*, 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 998 n. 14, 67 L.Ed.2d 59 (1981).

It is so ORDERED.

## CONSENT DECREE

Plaintiff Cecilia Garza, on behalf of herself and all others similarly situated, filed a complaint alleging discrimination in employment by Defendant Deaf Smith County.

After a class certification hearing the Court certified a class consisting of:

All Hispanics who, since March 6, 1979, have applied for and been denied employment with Deaf Smith County.

The Court then conducted a Phase 1 trial on the issues of liability and found that Defendant had discriminated against the class on the basis of race and national origin in violation of Title VII and 42 U.S.C. §§ 1981 and 1983 in hiring in the following departments: Sheriff's, Social Services, Building Maintenance, and County Commissioner Precinct No. 3; and that Deaf Smith County had also discriminated against Cecilia Garza on the basis of race and national origin in violation of Title VII and 42 U.S.C. §§ 1981 and 1983.

Notification of the class action was published and mailed to class members. Adequate notice was given to all members of the class certified by the Court.

Approximately 64 individuals filed Proof of Claim Forms in response to the notice. These 64 individuals constitute the "Claimants".

Defendant filed an appeal of the Court's Orders.

Subsequent to the foregoing, Plaintiff and Defendant, by their respective attorneys, arrived at a proposed compromise and settlement of this action. The settlement and compromise is evidenced by the Stipulation of Compromise and Agreement dated January 25, 1985 (the "Settlement Agreement"), and by this Consent Decree to which they have agreed.

In their Settlement Agreement, the Plaintiff and Defendant have each consented to the entry of this Consent Decree without this Consent Decree constituting any evidence of an admission with respect to any issue of fact or law in this action.

On January 28, 1985, the Court tentatively approved the Settlement Agreement between Plaintiff and Defendant as being fair, adequate and reasonable. That tentative approval was subject to notification to the Claimants and the Court's consideration of any objections. That notice was mailed to the Claimants on or about February 8, 1985.

Written objections to the settlement were required to be filed with the clerk of the Court on or before March 8, 1985. There was one (1) written objection filed. A hearing on objections to the settlement and on attorney's fees was held on March 18, 1985. At that hearing, all Claimants were given an opportunity to be heard.

The Court has fully considered this matter and, as a result of the foregoing and other hearings, is fully advised with respect to this matter.

NOW, THEREFORE, upon the consent of Plaintiff and Defendant, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

### I.

This Court has jurisdiction over the subject matter of this case, and of the Plaintiff and Defendant.

### II.

The terms of the Settlement Agreement are hereby adjudged as fair, reasonable and adequate. Accordingly, the Settlement Agreement is hereby approved pursuant to Fed.R.Civ.P. 23(e).

### III.

The provisions of this Consent Decree shall apply to Plaintiff, Claimants, the class certified by this Court and Defendant, and to each of their employees, agents, servants and attorneys, and all persons in active concert or participation with them.

### IV.

### INJUNCTIVE RELIEF AND AFFIRMATIVE ACTION

1. Defendant Deaf Smith County, its officers, agents, employees, attorneys and all those acting in active concert or participation with it, are permanently enjoined and restrained from discriminating against Hispanics on the basis of race and/or national origin in any hiring decisions for the following departments: Sheriff's, Social Services, Building Maintenance, and County Commissioner Precinct No. 3 (hereinafter collectively the "Four Departments").

2. Job openings not filled by lateral transfer or promotion from within each of the Four Departments, shall be filled only after:

(a) a notice of such opening is posted on a designated bulletin board in the Deaf Smith County Courthouse, and

(b) the job opening is advertised in the Hereford Brand by publication on at least three (3) separate days. All notices for job opening shall specify: (i) the name and office of the person from whom applications are to be obtained, (ii) the name and the office of the person to whom completed applications are to be returned, and (iii) the deadline for filing an application.

3. Whenever a person is given an application for a job opening in one of the Four Departments that person shall receive at that time:

(a) a written description of the job's requirements and duties,

(b) a written description of any specific job qualifications,

(c) if applicable, a written description of the necessary testing procedure setting forth:

(i) type of test required,

(ii) the administering entity,

(iii) the street address of the administering entity,

(iv) the name and telephone number of a contact person at the administering entity.

4. Deaf Smith County shall not use employee selection procedures for initial employment in any of the Four Departments in question unless such procedures have been validated in accordance with the Equal Employment Opportunity Commission's *Uniform Guidelines on Employee Selection Procedures*, 29 C.F.R. § 1607, or unless the County, with specific selection procedures, can show that such procedures have no disparate effect on Hispanics. The County shall have ninety (90) days from the date of this decree to conduct a review of all hiring procedures in the Four Departments in question before this paragraph shall become operative.

5. Within five (5) working days after an applicant has been selected to fill a job opening, the unsuccessful applicants shall be notified in writing that they were not hired. This notice shall include the following:

Deaf Smith County has been permanently enjoined and restrained by the United States District Court in Amarillo, Texas, from discriminating against Hispanics on the basis of race and/or national origin in any hiring decisions for the following departments: Sheriff's, Social Services, Building Maintenance, and County Commissioner Precinct No. 3.

If you believe that Deaf Smith County has not hired you because of your race or your national origin, you have the right to file a grievance with the Deaf Smith County Title VII Grievance Committee. To find out the necessary procedures for filing a grievance, contact one of the following:

Deaf Smith County Title VII
   Grievance Committee
c/o County Judge
Deaf Smith County Courthouse
Hereford, TX

Texas Rural Legal Aid
1406 West Highway 60
Hereford, Texas 79045

6. All records upon which employer selection in the Four Departments is based shall be maintained for a period of five (5) years. An applicant who claims that an employment decision was made in contravention of this Consent Decree, such applicant's attorney, or counsel for class, may inspect and copy, at their own expense, during normal business hours, after reasonable notice to the County (not less than 48 hours), the records maintained under this paragraph.

7. The County shall adopt hiring goals to be achieved over the next five years designed to increase the Hispanic employment in the Four Departments to a level equal to or above the percentage of Hispanics in the Deaf Smith County work force as shown by the statistics maintained by the Texas Employment Commission.

8. (a) There is hereby created a body to be known as the "Deaf Smith County Title VII Grievance Committee" (hereafter the "Grievance Committee"). The Grievance Committee shall consist of three (3) persons: one designated by the County, one designated by the class counsel, and a third person agreeable to both the class and the County. In the event those persons are unable to agree on a third person, they shall ask the Court to appoint an arbitrator to serve as the third person from a list prepared by the American Arbitration Association. The expenses of the arbitrator shall be borne equally by the grieving applicant and the County.

(b) The purpose of the Grievance Committee shall be to hear complaints regarding racial and/or national origin discrimination in hiring decisions made by the Four Departments and may be used by the County to hear similar complaints for all other departments. The Grievance Committee shall report directly to the Deaf Smith County Commissioner's Court and such body shall make any final decisions with respect to actions to be taken on the recommendations of the Grievance Committee.

(c) The Grievance Committee's recommendations shall issue upon majority vote of the Grievance Committee's members after hearing the evidence of both the grieving applicant and the County. Also upon majority vote, the Grievance Committee shall adopt such rules and procedures as are necessary to effectuate its purpose.

(d) A grieving applicant may appear before the Grievance Committee either in person or through a designated representative, who may or may not be a licensed attorney.

(e) The Grievance Committee shall have the power to subpoena witnesses and documents to further its investigations and shall meet at least monthly to hear any complaints of discrimination.

(f) All persons believing that they have suffered discrimination in violation of this Consent Decree shall first pursue remedies through the Grievance Committee before filing any action, claim or motion in this proceeding in this Court for enforcement, contempt, compliance or violation of the Consent Decree.

## BACK PAY

9. Defendant agrees to create a back pay fund for the class to be known as the "Deaf Smith County Class Settlement Fund" (hereafter the "Fund"). The Fund shall consist of a total of Sixty Thousand Dollars and no/100's ($60,000.0) which shall be deposited at interest for the class upon preliminary approval of the Settlement Agreement by the Court. The parties agree that the screening requirements for class members to qualify for back pay under this agreement will be:

(a) "Proof of Claim" forms must have been filed on or before January 1, 1985;

(b) Claimants must be Hispanic; and

(c) Claimants must have completed a written application for a position in one of the Four Departments during the class period.

The parties agree that the back pay fund described herein shall be distributed in the following manner. A formula will be developed by counsel for the class taking into consideration when claimant applied. Claimants will be paid on a pro rata basis. For example, if there were sixty claimants who applied at the same time, each would receive $1,000.00. If one claimant applied in 1980 and the remaining fifty-nine claimants applied in 1984, the 1980 claimant would receive a sum in excess of $1,000.00, reducing the sums received by the remaining fifty-nine claimants proportionately. However, the total amount paid by defendant out of the Fund to all claimants shall not exceed $60,000.00.

10. Defendant shall pay Plaintiff Cecilia Garza Eight Thousand Five Hundred Dollars ($8,500.00) as settlement of all claims asserted by her against Defendant.

## ATTORNEYS' FEES, EXPENSES AND COSTS

11. After full hearing, the Court finds the amount of $56,500.00 for attorneys' fees, expenses and costs to be reasonable in light of the standards enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), and *Piambino v. Bailey*, 610 F.2d 1306 (5th Cir. 1980). Notice has been given to the class of the proposed attorneys' fees, counsel has offered relevant evidence and was available for cross-examination, and objectors had an opportunity to be heard. The Court has carefully analyzed the motions for attorneys fees filed in this case, the briefs in support and in opposition thereto and the evidence and objections offered at the hearing, and has made an independent evaluation of the reasonableness of the fees.

## V.

This Consent Decree constitutes a final adjudication of this action with prejudice between Plaintiff, Claimants, the class members and Defendant. Plaintiff, Claimants and all members of the class and their precedessors and successors, are hereby barred from instituting, maintaining or asserting any claim, demand, right or cause of action against Defendant, arising out of an alleged discriminatory treatment in employment practices.

## VI.

There appears to be no just reason for delay in entering this Consent Decree. Consequently, the Court expressly directs the entry of this Consent Decree pursuant to Fed.R.Civ.P. 54(b).

## VII.

The Court hereby retains jurisdiction of this cause for the purpose of issuing any additional orders or decrees needed to effectuate, clarify or enforce the full purpose of this Consent Decree. This Consent Decree supercedes the Remedial Decree of September 19, 1984.

## VIII.

Entry of this Consent Decree is in the public interest.