# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50167

United States Court of Appeals
Fifth Circuit

**FILED**
May 3, 2019

Lyle W. Cayce
Clerk

INTERNATIONAL CORRUGATED AND PACKING SUPPLIES, INCORPORATED,

      Plaintiff - Appellee

v.

LEAR CORPORATION; LEAR MEXICAN SEATING CORPORATION, formerly known as Lear Trim, L.P.,

      Defendants - Appellants

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:15-CV-405

---

Before JOLLY, DENNIS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

    Defendants appeal the district court's order denying arbitration. Because this appeal presents unresolved factual issues, we VACATE and REMAND for the district court to determine in what manner the parties entered into the underlying agreements.

---

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50167

I.

For several years, Lear Corporation and Lear Mexican Seating Corporation (Lear) purchased packaging materials from International Corrugated and Packing Supplies, Inc. (Intercorpac). Intercorpac sued to recover unpaid invoices related to some of those sales. After removing to federal court, Lear moved to compel arbitration. Lear argued that purchase orders they sent to Intercorpac to facilitate Lear's purchase of packaging materials formed part of the contractual relationship between Lear and Intercorpac and required the parties to arbitrate the instant dispute. These purchase orders contained a statement explaining that the "Purchase Order incorporates and is governed by the Lear Corporation Purchase Order Terms and Conditions," along with a link to the website where the terms and conditions could be found. The terms and conditions contained an arbitration clause.

The parties dispute what role the purchase orders played in their transactions. Lear contends that when it needed materials from Intercorpac, it e-mailed a purchase order to Intercorpac, and Intercorpac responded by delivering the materials and sending an invoice to Lear. Intercorpac claims that Lear ordered its materials not by emailing a purchase order, but by calling or emailing Intercorpac with a delivery request, after which Intercorpac delivered the products. Lear then sent payment to Intercorpac by direct deposit on the fourth of every month.

The district court denied Lear's motion to compel arbitration, finding that Lear "fail[ed] to explain, in sufficient detail, how the process of ordering materials from [Intercorpac] began and continued during the parties' relationship or when each purchase order was sent in that process." If the purchase orders were sent after the contract was formed, the court explained,

"it appears that the terms and conditions and its provisions would be inapplicable to the parties' agreements." Even if the purchase orders were sent prior to shipment, the court noted, "the parties may have had prior discussions agreeing to certain terms of their transactions and purchase orders were merely sent to confirm those discussions before [Intercorpac] shipped goods to [Lear]."

Lear moved for reconsideration, proffering several email exchanges between themselves and Intercorpac purporting to show that Intercorpac was aware of the terms and conditions prior to the transactions at issue in this lawsuit. As Intercorpac points out on appeal, however, Lear did not "address[] the district court's inquiry of whether any prior discussions took place before sending purchase orders or the precise timing of when the purchase orders were sent, or how the process of ordering materials from Intercorpac began and continued during the parties' relationship."

Avoiding these open factual disputes, the district court assumed arguendo that Lear had "proven enforceable agreements through the course of dealing" with Intercorpac. It again denied Lear's motion to compel arbitration, however, reasoning that the terms and conditions (and thus the arbitration agreement) could not be incorporated by reference into the purchase orders because the purchase orders were unsigned, and Texas law required a signature to utilize incorporation by reference.

Lear appeals, arguing that Texas law does not require a signature to incorporate a document by reference. It contends that the signature requirement in Texas jurisprudence is a proxy for enforceability—so long as a contract is enforceable, according to Lear, it may incorporate an unsigned document by reference. The agreements at issue in this case, according to Lear, did not require signatures to be enforceable.

II.

We review de novo a district court's interpretation of an agreement to arbitrate and whether it binds the parties to arbitrate. *Cal. Fina Group, Inc. v. Herrin*, 379 F.3d 311, 315 (5th Cir. 2004) (citing *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003)). The district court's factual findings are subject to review only for clear error. *Id.*

When our jurisdiction is based on diversity, we apply the substantive law of the forum state. *James v. Woods*, 899 F.3d 404, 408 (5th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). We look to the decisions of the state's highest court for guidance, and if no decision of that court resolves the matter, we make an "*Erie* guess" as to how the court would. *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 209-10 (5th Cir. 2018) (citing *Temple v. McCall*, 720 F.3d 301, 307 (5th Cir. 2013)). Regarding "substantive innovation" in state law, we have cautioned that "[e]ven in the rare case where a course of Texas decisions permits us to extrapolate or predict with assurance where that law would be had it been declared, we should perhaps—being out of the mainstream of Texas jurisprudential development—be more chary of doing so than should an inferior state tribunal." *Rhynes v. Branick Mfg. Corp.*, 629 F.2d 409, 410 (5th Cir. Unit A 1980).

The Texas Supreme Court has not had occasion to determine whether a contract that is unsigned but otherwise enforceable may incorporate an unsigned document by reference. We decline to resolve this novel question of Texas law here because the district court has not yet ruled on the enforceability of Lear's purchase orders. Specifically, the district court has not determined how the parties entered the agreements at issue in this case—either through purchase orders, or phone calls or emails prior to the sending of purchase orders, or some other conduct—nor has it determined what effect, if any, the

parties' course of dealing has on such agreements.  *See* TEX. BUS. & COM. CODE § 2.204(a) ("A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."); *Tubelite, a Div. of Indal, Inc. v. Risica & Sons, Inc.*, 819 S.W.2d 801, 802, 804-05 (Tex. 1991) (evaluating "whether an agreement to pay interest arose . . . because of a course of dealing between two merchants"); *In re Freightquote.com*, No. 05-18-01028-CV, 2019 WL 995791, at *5 (Tex. App. Mar. 1, 2019) (evaluating whether a "forum-selection clause was incorporated into the contract . . ., either by reference or course of dealing"). Resolution of these key underlying factual disputes, which we cannot resolve on appeal, may make it unnecessary for a federal court to venture an *Erie* guess on Texas law.

Accordingly, we VACATE and REMAND to the district court for the limited purpose of making findings as to whether, when, and under what terms the parties entered into the agreements at issue in this case.  We retain jurisdiction of the appeal during the pendency of the limited remand.  *See Wheeler v. City of Columbus*, 686 F.2d 1144, 1154 (5th Cir. 1982).