Percy **ROBINSON**, Plaintiff-Appellant,

v.

Samuel **PRICE**, etc., et al.,
Defendants-Appellees.

No. 76–3737
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 9, 1977.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Percy Robinson pro se.

Gordon R. Cooper, II, Houston, Tex., for defendants-appellees.

Before GOLDBERG, CLARK and FAY, Circuit Judges.

FAY, Circuit Judge:

█ The decision of the district court dismissing this cause of action for failing to state a claim upon which relief may be granted is reversed. We feel that the plaintiff has set forth in his pleadings sufficient facts to preliminarily invoke the court's jurisdiction, and that his allegations of wrongful dismissal from his employment because of racial and religious reasons are sufficiently detailed and relevant to withstand dismissal under Federal Rules of Civil Procedure 12(b)(6). We recognize that the pleadings of the plaintiff (who is proceeding pro se) are poorly drafted, exceedingly wordy, and at times incorrect in their statement of the law. However, we are also fully aware of the rigid standard which must be met before dismissing a case. A motion to dismiss should not be granted unless it appears *to a certainty* that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Webb v. Standard Oil Co.,* 414 F.2d 320 (5th Cir. 1969).

█ The plaintiff alleges several bases for jurisdiction—some of which are obviously incorrect.[1] The plaintiff's main allegations, however, are based on 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) and their jurisdictional counterpart 28 U.S.C. § 1343. The plaintiff's principal argument with regards to these statutes is that he was denied certain rights guaranteed by the Fourteenth Amendment. To set forth a cause of action under the Fourteenth Amendment, it is necessary to allege that one's

1. For example, the plaintiff alleges that the district court has jurisdiction of the cause of action under 28 U.S.C. §§ 2201–2202, the Declaratory Judgment Act. The Declaratory Judgment Act is not a jurisdictional statute. It is procedural in nature and neither augments or diminishes the jurisdiction of the federal courts.

constitutional rights were infringed upon as a result of "state action" since the Fourteenth Amendment does not prevent invidious discrimination by private parties. *Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). The inquiry which must be made in this case, therefore, is whether there is a sufficiently close nexus between the state and the plaintiff's employer so that the actions of the latter may be fairly treated as that of the state itself. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). We feel that there is such a nexus alleged in this case.

The plaintiff states he was employed by the defendant Harris County Community Action Association (HCCAA) in July of 1967 and was terminated December 28, 1973. He alleges that he was terminated because of racial and religious reasons. It is difficult to tell from the pleadings exactly what connection the HCCAA has with the local and state governments of Texas. The plaintiff contends that the HCCAA is an antipoverty agency for the Houston-Harris County area. The HCCAA is a private, non-profit corporation, allegedly created with the consent of county and city governments to perform the responsibilities of the state and local government. The HCCAA receives federal funds through grants from the Office of Economic Opportunity. These funds are not granted directly to the HCCAA, but rather are granted to the State of Texas which then distributes them to the various community action agencies. The plaintiff alleges that the Houston-Galveston Area Council, along with the Mayor of Houston or the Planned Variation Department of Houston, has to approve all funding requests of the HCCAA. According to the plaintiff, the law requires that four representatives from the mayor's office and four representatives from the county judge's office sit on the Board of Directors of the HCCAA. The plaintiff contends that the operation of the HCCAA is a joint federal, state, county, and local government program, and that any action by the HCCAA falls within the definition of "state action" as required by the Fourteenth Amendment. There is little in the pleadings of the defendant that counters the plaintiff's description of HCCAA.

There is an abundance of case law interpreting what the term "state action" means. In *Hammond v. University of Tampa*, 344 F.2d 951 (5th Cir. 1965), the discriminatory admissions practices of the University of Tampa were attacked. This Court explained that although the University of Tampa is not a state or city university, its establishment was largely made possible by the use of a surplus of city buildings and the use of other city land leased for university purposes. As a result, we held that the City's involvement in the establishment and maintenance of the university was of such a nature as to require a holding that "state action" was involved in the denial of the plaintiff's rights. See also *Smith v. Young Men's Christian Association of Montgomery*, 5 Cir., 462 F.2d 634 (1974); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

There have recently been decisions of this Court and the Supreme Court narrowing the definition of "state action". We do not feel that these cases change the result in the case before us now. In *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), the United States Supreme Court held that actions by a state regulated utility company which was privately owned and operated did not equal "state action" for Fourteenth Amendment purposes. *Jackson* differs from the case at hand for two reasons. First, the Court in *Jackson* expressly stated that it was not dealing with the exercise by a private entity of powers or functions traditionally associated with sovereignty. The handling of welfare related problems, however, has been a function that has been traditionally dealt with by the state. Here the allegations are that HCCAA's funding comes from federal, state and local govern-

ments.[2] The alleged financial interrelationship between the HCCAA and the state is also part of the second reason why this case differs from *Jackson.* The Supreme Court in *Jackson* explained that they were not then reviewing a situation in which the state had so far insinuated itself into a position of interdependence with the private industry that it must be considered a joint participant. *Cf. Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). In the case before us, however, this is the alleged situation. The complaint sets forth that the funding of the HCCAA comes through the state government and that all funding requests have to be approved by the members of the various local governments with certain of these members sitting on the Board of the HCCAA. For these reasons, we feel that *Jackson* is not in conflict with our holding that under these allegations a trial court could conclude that actions by the HCCAA do equal state action.

This Court has also recently dealt with the doctrine of "state action" in other situations. See *Golden v. Biscayne Bay Yacht Club,* 530 F.2d 16 (5th Cir. 1976); *Greco v. Orange Memorial Hospital Corp.,* 513 F.2d 873 (5th Cir. 1975), *cert. denied* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975). In *Greco,* we held that actions by a private, non-profit hospital corporation which leased the hospital from the county for one dollar per year did not equal state action. However, in that case we expressly stated that the result would be quite different if we were dealing with an alleged civil rights violation. We explained that a broad definition of state action had earlier developed in order to deal with racial discrimination problems, and that courts are now finding it necessary to more precisely define this doctrine in situations in which civil rights violations are not alleged. Since the plaintiff in the present case is alleging a civil rights violation, it is obvious that the holding in *Greco* is not inconsistent with our holding here. In *Golden,* this Court, sitting en banc, held that there was no state action involved by a private club with a discriminatory membership policy simply because the club had a lease with the city for the use of some bay bottom land. Relying on several previously cited Supreme Court cases, we found that the lease alone did not provide a sufficiently close nexus between the city and the club so that the actions of the club may be fairly treated as that of the city. In the present case, by applying the same standards that we applied in *Golden,* we feel that a different result may be reached. The complaint alleges that the various branches of Texas government had a much greater involvement with the HCCAA than the City of Miami had with the Biscayne Bay Yacht Club. As a result, the actions of the HCCAA may equal state actions under the Fourteenth Amendment.

Finally, we feel that on remand the district court should consider whether the plaintiff has also made out a cause of action under 42 U.S.C. §§ 2000d et seq.—2000e et seq. In his pleadings, the plaintiff does assert that the actions of the defendant have violated the Civil Rights Act of 1964. These statutes could provide the district court with another basis for assuming jurisdiction, but we, of course, indicate no conclusion one way or the other.

Our holding is that the dismissal of this complaint upon a motion to dismiss was premature. The order of dismissal is reversed.

---

2. This may be an inaccurate statement of the Association's financing. At trial the district court may find that the actions of the HCCAA do not equal "state action" simply because the HCCAA does not actually function in the manner in which the plaintiff has depicted it.