**Mary G. SMITH, Plaintiff,**

v.

**EASTERN AIRLINES, INC., Defendant.**

**Civ. A. No. H–82–863.**

United States District Court,
S.D. Texas,
Houston Division.

Dec. 23, 1986.

Carolyn Garcia, Will Gray, Houston, Tex., for plaintiff.

William John Bux, Hughes & Luce, Dallas, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSION OF LAW

McDONALD, District Judge.

Mary Smith, Plaintiff, brought this civil action, individually, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, alleging that Eastern Airlines, Inc., Defendant, discriminated against her with regard to hiring because of her sex. Eastern denies discriminating against Mary Smith on the basis of sex.

## FINDINGS OF FACT

1. Mary Smith is a female whose height is 5 feet 11 inches. Eastern Airlines, Inc. is a corporation and an employer within the meaning of Title VII, 42 U.S.C. 2000e, *et seq.*

2. In November of 1974, Eastern maintained a height and weight requirement for male and female attendants. The height requirement for males was from 5 feet 7 inches to 6 feet 2 inches and the height requirement for females was from 5 feet 2 inches to 5 feet 9 inches. Pursuant to that policy Eastern rejected applicants who were outside the height range for employment as flight attendants.

3. On November 17, 1974, Mary Smith read an advertisement in the "Houston Post" newspaper. The advertisement, which was placed by Eastern, solicited male and female persons to apply for employment as a flight attendant. Through the advertisement, Eastern offered personal interviews for prospective applicants at the Quality Motel, at 5805 Jetero Boulevard, in Houston, Texas, on November 22, 1974, between the hours of 9:00 a.m. and 4:00 p.m. The advertisement noted that applicants have the following qualifications:

... must be 21, attractive, and in good health (with at least 20/40 vision or 20/100 corrected to 20/40 with contacts or glasses). Females must be 5' 2" to 5' 9", males 5' 7" to 6' 2", with weight in proportion to height.

4. Mary Smith, at age 25, appeared at the appointed time and place to apply for a job as a flight attendant. Through its recruitment representative, who was hired to conduct the interviews, Eastern rejected Mary Smith's application for employment. The testimony of Eastern's recruitment representative, Nancy Straughm, was inconclusive regarding the differing reasons for Mary Smith's rejections. After viewing Mary Smith in the courtroom, Ms. Straughm testified that Mary Smith probably would not have been hired because she did not have the "Miss America" look. Ms. Straughm did not hear the Plaintiff testify and the basis of her opinion was her viewing Plaintiff while sitting at counsel's table. An Eastern executive testified that contrary to Ms. Straughm's opinion the Company did not have a policy of looking for "Miss America" types. Nevertheless,

the evidence and testimony were conclusive that Mary Smith would have been ultimately rejected because of her height. Mary Smith testified that the hiring employer remarked that she was too tall and rejected her application on that basis without going further into the interviews.

5. Mary Smith's testimony established that she was otherwise qualified for the position of flight attendant. The evidence shows that Mary Smith had a college degree in nursing, was a licensed, registered nurse, and had prior experience working with people in the personnel department of Houston Power and Lighting Company.

6. Based upon the testimony elicited at trial, the Court finds that Mary Smith was denied an opportunity to apply for employment with Eastern as a flight attendant solely on the basis of her height. While there is some confusion on Eastern's part whether Mary Smith ever completed an application, the Court finds that an application for employment was made to Eastern and was rejected by Eastern.

7. Eastern's practice of using height requirements was instituted in late 1950 or early 1960. A brochure from that period reflects that the height requirement for females was from 5 feet 2 inches to 5 feet 9 inches (Defendant's Exhibit Number 7). In mid 1973, Eastern began actively recruiting male applicants. The height requirement for the male candidates was from 5 feet 6 inches to 6 feet. In 1974, the male height requirement changed and males were required to be from 5 feet 7 inches to 6 feet 2 inches. Eastern instituted the height requirements allegedly in order to employ flight attendants of average height. Eastern derived its figures from a report of the United States Department of Health, Education and Welfare, Summary Docket Vitals and Health Statistics. That summary showed that out of all persons between the ages of 18 years and 24 years, the percentage of males between 5 feet 7 inches and 6 feet 2 inches was proportionally equal to the percentage of females between 5 feet 2 inches and 5 feet 9 inches (Defendant's Exhibit Number 11).

8. Based upon the above findings the Court finds that the Plaintiff has not sufficiently demonstrated a prima facie case that Eastern was engaged in a facially neutral practice which impacts more severely on females as opposed to males. The Court does not find a disparate impact on females as a group resulting from Eastern's height requirement policy.

9. The Court finds Plaintiff has established a prima facie case of disparity in the treatment of females as opposed to males resulting from Eastern's height requirement. Males of height 5 feet 10 inches to 6 feet 2 inches are able to make application for employment while females of the same height are not able to apply for the same employment.

10. The Court finds that Eastern instituted the height restrictions for nondiscriminatory reasons: to employ persons of average height and to employ a proportionately equal number of male and female applicants.

11. The Court does not find Eastern's reasons to be a pretext for discriminatory intent.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and subject matter of this lawsuit pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.* (1982) (supp. 1985).

2. Venue is proper in this district and division. 42 U.S.C. § 2000e–5(f)(3).

3. In Title VII actions there are two theories of recovery: the Plaintiff may recover by demonstrating an adverse impact on the group of protected persons to which she is a member (females), or she may recover by showing disparate treatment between male applicants and female applicants. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335–336 n. 15, 97 S.Ct. 1843, 1854–1855 n. 15, 52 L.Ed.2d 396 (1977). Either theory may be applicable to the same set of facts. *Wheeler v. City of Columbus, Miss.,* 686 F.2d 1144 (5th Cir.1982).

4. When proceeding under a theory of disparate impact, the plaintiff must show the existence of a facially neutral practice which impacts more severely on a protected group. *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Proof of actual discriminatory purpose is not required. *Teamsters,* 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. A prima facie case of unlawful discrimination, therefore, is established by identification of a neutral employment practice coupled with proof of its disparate impact on the employer's workforce. *Johnson v. Uncle Ben's, Inc.,* 657 F.2d 750, 753 (5th Cir.1981).

5. The plaintiff may use statistics to establish a prima facie case. *Pouncy v. Prudential Insurance Company of America,* 668 F.2d 795, 800 (5th Cir.1982). In a disparate impact case, plaintiff's statistics need only show a "marked disproportion" between the representation of females in the employer's workforce and female representation in the labor pool from which the employees are selected. *Rivera v. City of Wichita Falls,* 665 F.2d 531, 535 n. 5 (5th Cir.1982). In other words, statistics which demonstrate a significant disparity in an employer's workforce or labor pool raise an inference that employment decisions are tainted by intrusion of illegitimate concerns. *Pouncy,* 668 F.2d at 800. Where the statistical evidence is insufficient proof, the plaintiff may buttress her case by combining statistics with historical, individual, or circumstantial evidence. *Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798 (5th Cir.1982), *reh'g denied,* 683 F.2d 417 (5th Cir.1982), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982).

6. If the plaintiff sufficiently proves her prima facie case, then the burden shifts to the employer to justify the employment practice by showing a business necessity for it. *Levin v. Delta Airlines, Inc.,* 730 F.2d 994 (5th Cir.1984). Assuming the employer can show a business necessity, the plaintiff may still prevail by showing less discriminatory alternatives were available. *Albemarle Paper*

*Company v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

7. Because the evidence presented by the Plaintiff did not establish that Eastern's height requirement impacts more severely on females than on males, the Court concludes that the Plaintiff failed to make her prima facie showing of discrimination under the theory of disparate impact. In *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), the plaintiff offered statistical data to show that the employer's height and weight requirements disproportionately excluded women. By contrast, in this case Plaintiff offered no statistical evidence on the impact on the challenged practice on females or males. Moreover, the only statistical evidence adduced at trial was presented by Eastern. That evidence showed that an equal percentage of men and women were eliminated from consideration for the flight attendant's position because of the height requirement policy.

8. As stated earlier, the Plaintiff may also seek Title VII relief under a theory of disparate treatment. Under this theory, the ultimate issue is whether the employer intentionally discriminated against the Plaintiff. *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 564 (5th Cir.1983).

9. The order of initial proof required under a theory of disparate treatment has been outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff has the burden of producing evidence to support a prima facie case of sex discrimination. Plaintiff's prima facie elements are 1) that Plaintiff belongs to a protected class—female; 2) that Plaintiff applied and was qualified for a job for which the employer was seeking applicants;[1] 3) that despite her qualifications,

---

**1.** Here the term "qualified" simply means an    essential ability to perform the job, not that

she was rejected; and 4) that after her rejection, the position or positions remained open and the employer continued to seek applicants from the pool of persons (male or female) with the Plaintiff's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

10. Establishment of the prima facie case creates an initial presumption of intentional discrimination. This presumption may be overcome by the employer offering some lawful reason for rejecting the plaintiff. The employer's response dissolves the prima facie case of unlawful discrimination and shifts the burden back to the plaintiff to prove, at a heightened level of specificity, that the employer's reasons were mere pretext. *Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 639 (5th Cir.1985).

11. At this stage the court must make a factual determination of whether defendant intentionally discriminated against the Plaintiff. *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1481. If intent is found, the employer may, under limited circumstances, assert the defense of bona fide occupational qualification (BFOQ) as found in § 703(e) of Title VII, 42 U.S.C. § 2000e–2(e).

12. The Supreme Court has clarified its position on the plaintiff's burden of proof in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), where the Supreme Court noted:

> But *McDonnell Douglas* did make clear that a Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act....'
>
> We think the Court of Appeals went awry, however, in apparently equating a prima facie showing under *McDonnell Douglas* with an ultimate finding of fact as to discriminatory refusal to hire under Title VII; the two are quite different....

Plaintiff met the job description required by the employer. *See Burdine v. Texas Dep't of Community Affairs*, 647 F.2d 513, 514 (5th Cir.1981);

The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race....' A prima facie case under *McDonnell Douglas* raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. And we are willing to presume this largely because we know from our experience that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race. ... To dispel the adverse inference from a prima facie showing under *McDonnell Douglas*, the employer need only 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'

*Furnco Construction*, 438 U.S. at 576–78, 98 S.Ct. at 2949–50 (citations omitted).

13. Subsequently in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court further defined the employer's burden in rebutting the plaintiff's prima facie case. The Court held that:

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated

*Davis v. Califano*, 613 F.2d 957, 964 (D.C.Cir. 1979).

against the plaintiff. To accomplish this, defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted....

*Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094 (citations omitted). In other words, the employer's burden in response to a prima facie case is one of production and not proof. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094.

14. Once the employer comes forward with some legitimate nondiscriminatory reason, the plaintiff then has the burden of proving by a preponderance that the employer's articulated reason was a pretext for discrimination. *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1256 (5th Cir.1977). The plaintiff may achieve this either by persuading the court that more likely than not the employer was motivated by discriminatory reasons or by disproving the explanation offered by the employer to rebut plaintiff's prima facie case. *Thornbrough,* 760 F.2d at 639–40. However, in the final analysis, the ultimate issue with regard to an allegation of discrimination is discriminatory intent and the plaintiff alone carries the burden of making that showing by a preponderance of the evidence. The ultimate burden of persuasion as enunciated in the preceding sentence, remains at all times with the plaintiff. *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1089.

█ 15. The Court concludes that the Plaintiff has established her prima facie case of discrimination under the disparate treatment theory. The Court, however, finds that she is unable to show that Eastern's proffered reasons for the employment practice are a mere pretext for discrimination.

Mary Smith sufficiently demonstrated a prima facie case that Eastern had a practice which on its face caused a substantial disparity in the treatment of males and females of similar height. The testimony revealed that a female of height 5 feet 11 inches would be rejected as an applicant while a male of the same height would not, thus demonstrating a substantial disparity in treatment. The Plaintiff's evidence shifted the burden of production to the employer to present nondiscriminatory reasons for the practice or policy.

The employer presented evidence, such as the history of the policy and the statistical basis for the differential in height figures for males and females. The Court concludes that the employer's evidence sufficiently rebuts the presumption of discriminatory intent.

Unpersuaded that Defendant's policy was motivated by unlawful discrimination and finding no evidence in contradiction to the employer's stated reasons for the policy, the Court concludes that the policy of height differentials in airline flight attendants was not proven to be a pretext for discrimination based on sex.

16. The Court concludes that Ms. Smith failed to establish by a preponderance of the evidence that the employer was motivated by discriminatory purpose in adopting and using its policy of height differentials for female and male flight attendants. As a result Mary Smith has failed to prove by a preponderance of the evidence that she was subjected to gender-based discrimination in violation of Title VII.

17. Judgment is entered for the Defendant.

18. Each Party shall bear its own cost.

It is so ORDERED.