**Eugene W. WOOD, Jr., Plaintiff,**

v.

**EXXON CORPORATION, d/b/a Exxon Office Systems Company, Defendant.**

**Civ. A. No. H–83–570.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 23, 1987.

Carnegie H. Mims, Jr., Mims, Plummer & Rice, Houston, Tex., for plaintiff.

Tony P. Rosenstein and Ingrid J. Blackwelder, Baker & Botts, Houston, Tex., Myrde S. Eisen and William T. Stack Exxon Company, U.S.A., Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McDONALD, District Judge.

This is an age and race discrimination case, brought under the provisions of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983. In particular, Plaintiff alleges that he was denied opportunities for promotion and was terminated from Defendant's employment because of his age and race. Defendant contends that its employment decisions regarding Plaintiff were not based upon his race or age.

Pursuant to Federal Rules of Civil Procedure 52, the Court enters these findings of fact and conclusions of law establishing the basis for its disposition of this case.

### Findings of Fact

1. Plaintiff is an employee and Defendant (hereinafter also "Exxon" or the "Company") is an employer as those terms are used in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and in the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). At all times relevant to this lawsuit, Plaintiff, a black male, has been a resident of Fort Bend County, Texas.

2. Plaintiff was born on October 24, 1935, and is a member of the group protected under the ADEA. At the time of his termination, Plaintiff was 47 years old.

3. Plaintiff was hired by Exxon Office Systems Company as a sales trainee on September 12, 1977. At the time of hire, Plaintiff was 42 years old.

4. At the time he was hired, Defendant believed that Plaintiff had the necessary experience and ability to be a good salesman. Plaintiff had at least ten (10) years of experience as a salesman at the time of his employment. After the initial nine-week training program, Plaintiff was promoted to the next level, Sales Representative, on November 15, 1977.

5. During Plaintiff's first two years at Exxon, his sales performance was very good. During this period, Plaintiff usually met or exceeded his sales quota. He, however, was not considered ready for a promotion to management at the time of his first annual performance evaluation in 1978. Defendant's Exhibit 1. His supervisors were aware of Plaintiff's expressed interest in a management position and, by 1979, were making efforts to assist him in attaining such a position. In September 1979, Marshall Scott, Plaintiff's Marketing Manager, discussed areas of concern and additional areas that the Plaintiff should work on in order to be considered for a management position. Defendant's Exhibit 2. Scott recognized that Plaintiff's sales production was good, but he pointed out that Plaintiff's organization and territory management needed to be strengthened before Plaintiff could be considered for a management position. Defendant's Exhibit 2.

6. On two occasions, Plaintiff was offered a sales trainer position at the Company headquarters in Orlando, Florida by Roy Beckward, National Sales Manager. Defendant's Exhibit 16. The sales trainer position was viewed as a stepping stone to a management position. Plaintiff testified that, had he been offered a sales trainer position, he would have accepted it. Plaintiff denied that he was ever offered a sales trainer position; however he did testify that Beckward met with him and Frank Brick, Branch Manager. Scott testified that Plaintiff turned these promotions down because he wanted to stay in Houston and could make more money as a sales representative. The Court finds that the evidence presented by Defendant is more credible, and that Plaintiff refused to accept offers of promotion on two occasions.

7. Beginning in mid–1980, Plaintiff began to display inconsistencies in his sales performance. His sales production levels were sporadic, and he was counseled concerning the need to improve. On July 18, 1980, Jerry Blackburn, Branch Manager, counseled Plaintiff regarding his poor sales performance, advising him that his performance for the first six months of 1980 was not acceptable. Blackburn offered his own support and that of Marshall Scott, Marketing Manager, to help Plaintiff improve his performance and achieve his quota. Defendant's Exhibit 3. Plaintiff testified that his performance for the six-month period was low because he had missed some time from work in June 1980 due to

illness. Plaintiff claimed that his quota should have been adjusted because of his hospitalization. The Court finds that Blackburn did make allowances in Plaintiff's quota for his absence and that the absence had no bearing on his performance for the first six months of 1980. Defendant's Exhibit 3.

8. Despite the counseling and Blackburn's memorandum, Plaintiff failed to demonstrate substantial improvement in performance. In August, 1980, he was again counseled orally and in writing by Blackburn and was placed on a Corrective Action Plan, a form of probation. Defendant's Exhibit 4.

9. In September 1980, Blackburn again counseled Plaintiff orally and in writing. At this time, Plaintiff was unequivocally advised that improvement in this performance was "imperative and necessary" in order to continue his employment with Exxon. Plaintiff was told that his performance was "below acceptable" and that he had to meet the September sales quota established by Blackburn. Defendant's Exhibit 5.

10. On December 4, 1980, Plaintiff received yet another written warning from Blackburn about his performance, calling it "a serious problem." In addition to problems with sales production and with sales prospects, Blackburn also pointed out that Plaintiff's attendance at staff meetings had been poor. Blackburn established minimum goals for Plaintiff to achieve in December 1980. Defendant's Exhibit 6.

11. In the first six months of 1981 Plaintiff's sales were significantly below his quota. In August 1981, Plaintiff received oral and written counselings from Marshall Scott, Marketing Manager. Scott set minimum goals for Plaintiff to achieve and informed Plaintiff that failure to meet those goals would result in his being placed on an Action Plan. In order to help Plaintiff achieve these goals, Scott told Plaintiff he would spend one full day a week with

him. Defendant's Exhibits 8 and 9. Scott testified that he did in fact spend one full day a week with Plaintiff.

12. Plaintiff was advised by John Linney, Branch Manager, of the need to attend cross-training sessions on the new equipment he would be selling. Defendant's Exhibit 7. Although Plaintiff contends that this is evidence of discrimination, both he and Linney testified that memoranda were sent to all sales representatives who had failed to attend such training sessions.

13. In January 1982, Scott counseled with Plaintiff regarding the need to update and complete his Territory Book, which is a book maintained by sales representatives containing detailed customer and scheduling information. At this time he also counseled Plaintiff on areas of needed improvement that he had observed during a field travel day he had spent with Plaintiff. Defendant's Exhibit 11.

14. After Plaintiff missed a customer appointment in June 1982, Plaintiff was again counseled about his performance by Bill Weaver and Doug Huckaby. Plaintiff had also neglected to contact a prospective customer. After reviewing Plaintiff's performance with his managers and Employee Relations, Plaintiff was placed on an Improvement Plan dated July 1, 1982. Defendant's Exhibit 13.

15. After counseling with Plaintiff on July 1, 1982, Huckaby began spending one day each week accompanying Plaintiff on his sales calls. Although Huckaby testified that spending one day per week with Plaintiff resulted in his spending a disproportionate portion of his time with one of his senior sales representatives, the effort was initially fruitful. Plaintiff had a strong sales month in July, achieving 124% of his quota for that month. Plaintiff's Exhibit BD. However, in August 1982, he only made 38% of his monthly quota and in September he had a negative percentage of quota.[1]

1. Plaintiff's Exhibit BF show that for the second half of 1982, Plaintiff had a sales quota of 8,496 points, or 1416 per month. The Plaintiff's sales performance for the period July–September 1982 is outlined below. He was terminated in early October 1982.

16. The written and oral counselings given to Plaintiff were at all times based on his supervisors' sincere beliefs regarding the quality of his work. The Employee Relations office was aware and had approved the written memoranda. Plaintiff admitted that, during the last two years of his employment, each of the seven or eight superiors who evaluated Plaintiff's performance noted significant deficiencies.

17. Plaintiff has been counseled by his present employer, Ricoh, regarding the same aspects of his performance including territorial management, attention to detail, administrative duties, failing to make quota and tardiness to meetings, as he had been counseled for at Exxon. Wood testimony, Vol. VI at 45–46. The evidence regarding the evaluation of Plaintiff's performance by his current employer was admitted for impeachment purposes only. It is also not germane since Exxon could not have known this information at the time of its adverse employment decisions regarding the Plaintiff. Originally, Plaintiff testified that he could not recall having been counseled by his current employer regarding his performance. Defendant presented evidence that tended to rebut this.

18. Plaintiff claims that he should have received several promotions during his tenure with Defendant. However, the Court finds that only two promotions were available during the relevant period. Both these promotions went to members of Plaintiff's protected class. The other promotions that Plaintiff now complains he did not receive are barred by the statute of limitations.

19. Based on the foregoing findings of fact, the Court concludes that there is little tangible evidence of discrimination based on race or age in Plaintiff's failure to obtain a promotion. Rather, the evidence demonstrates that Plaintiff was not qualified for promotion, and this view is supported by several factors:

(1) Plaintiff's work performance was inconsistent and sporadic. Plaintiff had performance deficiencies and was weak in the area of organizational skills, territory management and administrative detail.

(2) Plaintiff was repeatedly given both oral and written counselings concerning his performance deficiencies

(3) Plaintiff's performance problems led to his being placed on Action Plans, a probationary status, on at least three occasions.

20. On June 8, 1982, Plaintiff had scheduled a product demonstration for a customer, Northwest Academy. Plaintiff failed to appear for the demonstration, leaving the customer waiting for an extended period of time. When the receptionist told Larry Rhodes, Branch Manager, that the customer had been waiting on Plaintiff, Rhodes found Andy Spear, another sales representative, and asked him to conduct the demonstration. Spear did the demonstration and selling of the product. However, the entire commission was paid to Plaintiff, and Plaintiff received full credit toward his quota.

Plaintiff did not call to let the customer or the Company know that he would be missing the appointment he had scheduled. Plaintiff forgot to write the appointment down in his calendar. Plaintiff was advised in writing by Bill Weaver, Marketing Operations Manager, that his failure to show up at the demonstration was totally inexcusable. The written counseling also

SALES PRODUCTION OF EUGENE WOOD
July-August-September 1982

| | Year-to-Date Quota | Year-to-Date Installed | Year-to-Date %Quota | Monthly Installed | Monthly %Quota |
|---|---|---|---|---|---|
| July | 1416 | 1765 | 124% | 1765 | 124% |
| Aug. | 2830 | 2300 | 82% | 535 | 38% |
| Sept. | 4245 | 2275 | 54% | –25 | 0% |

Source: Plaintiff's Exhibits BD and BG; Defendant's Exhibit 20.

included a warning stating that future similar occurrences would be cause for disciplinary action. Defendant's Exhibit 12.

21. Later in June 1982, Jack Kee, a walk-in prospective customer in Plaintiff's territory asked that Plaintiff get in touch with him to arrange a demonstration in order to help Kee decide what type of equipment to buy. Plaintiff testified that he attempted several times unsuccessfully to return Kee's call during the week he received it. Plaintiff stated that he left a message with Mr. Kee's answering service. Plaintiff stated that he was not able to put the highest priority on his sales efforts because of a time consuming training session that he was attending. Plaintiff further testified that after the training session he did not attempt to call Mr. Kee immediately and that he put it on the "back burner" because the prospective customer had not returned Plaintiff's call.

Douglas Huckaby, Plaintiff's Marketing Manager, testified that Mr. Kee had called him to complain that Plaintiff had not returned his calls. Huckaby went to Kee's office in an effort to sell him the equipment, but was unsuccessful. His meeting with Kee, however, reconfirmed his conclusion that Plaintiff had not exercised sufficient diligence in returning Kee's call.

Since the products sold by the Company were in direct competition with those marketed by well-established companies such as IBM, Xerox, and Lanier, customer-initiated requests for demonstrations were not common and were considered a prime opportunity for getting new business. By Plaintiff's own admission such customer-generated requests were considered very important in terms of business development. Huckaby considered Plaintiff's failure to respond promptly to a customer who had expressed an interest in making a purchase to be a serious omission. Plaintiff disagreed with Defendant's characterization of the Kee incident as set out in Defendant's Exhibit 13 item 2, and noted that objection on the document.

22. On July 1, 1982, Plaintiff was placed on an improvement plan (probation). The two June incidents were discussed, both orally and in writing, with Plaintiff by Bill Weaver, Marketing Operations Manager, and Doug Huckaby, Marketing Manager. The Improvement Plan was approved by Employee Relations. Huckaby testified that he clearly told Plaintiff that any further instances of customer neglect would result in Plaintiff's termination. In the written memorandum given to Plaintiff at this time, he was specifically warned that "there must be *no* valid customer complaints." [emphasis in original]. Defendant's Exhibit 13.

23. In September 1982, Defendant received a third customer complaint about the Plaintiff, this time from Sam Altimore, President of First Mid-America. Plaintiff had failed to keep an appointment with Mr. Altimore. Mr. Altimore complained to James Lindner, one of the Vice Presidents of Exxon Office Systems. Mr. Lindner called Larry Rhodes, Branch Manager and told Rhodes to investigate the complaint. Rhodes called Altimore, who told Rhodes that Plaintiff had failed to appear for an appointment on September 30, 1982. Plaintiff had not called to reschedule. Rhodes asked Huckaby to investigate the facts, both with the Plaintiff and the customer. Rhodes also reviewed the incident with Employee Relations. Sharon Everett told him to investigate the facts and if Plaintiff did in fact miss the appointment, Rhodes had the authority to terminate Plaintiff. Following Rhodes' instructions, Huckaby met with Altimore, who said there was no misunderstanding, that Plaintiff had failed to keep the appointment. Huckaby then met with Plaintiff. Huckaby testified that Plaintiff said his appointment was for October 7 and not September 30. Huckaby asked to see Plaintiff's appointment book and Plaintiff complied. There was no appointment recorded for either date. Huckaby testified that Plaintiff then admitted that he had not made nor kept an appointment with Mr. Altimore.

Huckaby had the authority to terminate Plaintiff if he felt that the Sam Altimore incident constituted a valid customer complaint. Although Plaintiff insisted throughout trial that there never was an

appointment scheduled and produced Plaintiff's Exhibit BK as proof, this Court finds that the evidence presented by the Defendant is more credible and that Plaintiff forgot to record the appointment in his calendar. The court also finds that Defendant was unaware of and had never seen Plaintiff's Exhibit BK which Plaintiff claims to have shown to Huckaby the day of his termination.

24. Defendant had received three customer complaints concerning Plaintiff in a four-month period of time. Plaintiff had been warned that any more valid customer complaints could lead to discharge. When the complaint from Mr. Altimore was proved to be a valid complaint, Defendant felt it had no choice but to terminate the Plaintiff. Defendant was in a highly competitive business and Plaintiff had been negligent with regard to customers. Furthermore, Plaintiff engaged in the very conduct that resulted in the earlier counseling and written warnings. Defendant's Exhibits 12 and 13. Plaintiff was discharged on October 6, 1982.

25. Based upon the foregoing findings of fact, the Court concludes that there is no inference of discrimination based on race or age in Plaintiff's discharge. Rather, the evidence demonstrates a justifiable discharge for cause, and this view is supported by several factors:

(1) Although customer contact is critical in the Company's business, Plaintiff missed meetings with customers that he had scheduled in June 1982, and September 1982, resulting in customer complaints. Plaintiff also failed to make contact with a walk-in who had requested assistance with a purchase, also resulting in a customer complaint.

(2) On several occasions, Plaintiff was specifically warned that customer neglect or missing meetings with potential customers would result in his termination. Plaintiff was given suggestions and assistance aimed at improving his performance.

(3) Finally, the decision to discharge Plaintiff appears not unreasonable to the Court. Plaintiff simply failed to conform his behavior to the requisites of his position.

26. Plaintiff's claim that the Defendant discriminated against him in territorial realignments is without merit. By Plaintiff's own admission territory adjustments were made quite frequently. By June 1981, Defendant had merged three divisions, Qwip, Qyw, and Vydec, to form the Exxon Office Systems Company. Before the merger, each division had its own sales force. After the merger, Defendant decreased each sales representative's assigned territory, but increased their product line. Plaintiff agreed that the only sensible way for Defendant to operate its business was to try to create territories that were equitably balanced. In short, Plaintiff has failed to show that Defendant's efforts were unsuccessful or that he was treated differently than any other employee with respect to territorial assignments.

27. Plaintiff was not denied a place on the Exxon team because of his race or age. Members of the Exxon team were assigned to sell Exxon office machines to divisions of the Exxon Corporation. The evidence showed that of the seven persons on the Exxon team, two were black and one was Hispanic. Further, Plaintiff offered no credible evidence to support his claim that his race was a factor in his not being assigned to the Exxon team.

28. Plaintiff filed a charge of discrimination based on age and race with the Equal Employment Opportunity Commission ("EEOC") on October 9, 1982. After investigation, the EEOC sent a letter dated July 12, 1983 to Plaintiff stating that the EEOC was terminating further processing of Plaintiff's charge and notifying Plaintiff of his right to sue. Plaintiff filed this lawsuit on September 23, 1983.

29. The Court also finds that assuming *arguendo* that the Defendant was wrong in terminating and not promoting the Plaintiff, Defendant had a sincere and honest belief for Plaintiff's termination and promotion denials and this belief was supported by lawful reasons.

30. Any of the foregoing findings of fact deemed to be conclusions of law are hereby adopted as such.

### Conclusions of Law

1. The Court has jurisdiction of the subject matter and of the parties to this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, the Civil Rights Act of 1870, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*

2. This Court has no subject matter jurisdiction over Plaintiff's claim under 42 U.S.C. § 1983. Section 1983 applies only to persons acting under color of state law. An individual who does not claim that a private employer was acting under color of state law cannot sue the employer under 42 U.S.C. § 1983. *Kuzmins v. Employee Transfer Corp.*, 587 F.Supp. 536 (N.D.Ohio 1984). *See also Robinson v. Price*, 553 F.2d 918 (5th Cir.1977).

3. Venue is proper in this district and division.

4. The applicable limitation period under Title VII and under the Age Discrimination in Employment Act is 180 days. 42 U.S.C. § 2000e–5(e) (1985); 29 U.S.C. § 626(d)(2) (1985). Plaintiff's charge of discrimination was filed with the EEOC on October 19, 1982. Any acts of alleged discrimination occurring on or before April 22, 1982, are barred by limitations. *See Merrill v. Southern Methodist University*, 806 F.2d 600, 604 (5th Cir.1986).

5. The applicable limitation period under 42 U.S.C. § 1981 is two years. *Cervantes v. IMCO, Halliburton Services*, 724 F.2d 511, 513 (5th Cir.1984). Plaintiff's Original Complaint was filed on September 23, 1983. Any acts of alleged civil rights violations occurring on or before September 23, 1981, are barred by limitations.

6. A claim under 42 U.S.C. § 1981 requires a showing of purposeful discrimination. *Crawford v. Western Electric Co., Inn.*, 614 F.2d 1300, 1309 (5th Cir.1980). Similarly, a showing of discriminatory intent is required under a disparate treatment mode of analysis of Title VII.

*Thornbrough v. Columbus and Greenville R. Co.*, 760 F.2d 633, 638 (5th Cir.1985).

7. The elements of an individual employment discrimination claim under 42 U.S.C. § 1981 are identical to those under Title VII. *Crawford*, 614 F.2d at 1315. Moreover, the elements of an individual employment discrimination claim under the ADEA are also identical to those under Title VII. *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977).

8. In presenting his suit, Plaintiff had the initial burden of establishing a prima facie case by showing "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a[n illegal] discriminatory criterion.' " *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

9. The order of proof required in an action such as this is outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Essentially, a Plaintiff is required to establish a prima facie case of discrimination, thus creating a rebuttable presumption of statutory violation. Once the plaintiff has established a prima facie case, the employer must articulate some legitimate, nondiscriminatory reason for the disputed employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

10. To establish a prima facie case of discrimination based on his discharge, the Plaintiff must show that: (1) he is a member of a protected group; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a person not within the protected group. *Id.* To establish a prima facie case of discrimination because he did not receive a promotion, the Plaintiff must show that: (1) he is a member of a protected group; (2) he applied for and was qualified for the vacancy; (3) despite his qualifications he was

rejected; and (4) after his rejection the position remained open and the employer continued to seek applications from persons of similar qualifications. *See Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Goff v. Continental Oil Co.,* 678 F.2d 593, 595 (5th Cir.1982).

■■ 11. The Defendant's burden is one of production only. *Burdine,* 450 U.S. at 254, 93 S.Ct. at 1094. The employer is not required to prove the absence of a discriminatory motive. *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 24–25, 99 S.Ct. 295, 295–96, 58 L.Ed.2d 216 (1978); *Whiting v. Jackson State University,* 616 F.2d 116, 121 (5th Cir.1980).

■■ 12. If a defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment decision, the plaintiff may still prevail if he can prove by a preponderance of the evidence that the act or practice served as pretext for discrimination notwithstanding the apparently nondiscriminatory rationale established by the defendant. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. Ultimately, the burden of persuasion rests on the plaintiff, who must establish the statutory violation by a preponderance of the evidence. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Moreover, the plaintiff must ultimately persuade the Court that "but for" the fact he was in a protected group, he would not have been discharged. *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981).

■■ 13. Even if an employer is wrong, its honest belief in nondiscriminatory reasons serves as a legitimate reason for its actions. *Jefferies v. Harris County Community Action Associations,* 615 F.2d 1025, 1036 (5th Cir.1980); *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251 (5th Cir. 1977). Therefore, even if Defendant was incorrect in the actions it took with regard to Plaintiff's employment, its sincere belief that the actions were justified is a legitimate reason for those actions if that belief is based on lawful reasons.

■■ 14. Plaintiff has failed to establish a prima facie case of discrimination that his discharge was based on his age or race. The Court finds that Plaintiff has failed to show that he was qualified for the position from which he was discharged, having engaged in the particular misconduct which his supervisors had stated in writing would be both a necessary and a sufficient cause for his discharge.

15. Even if Plaintiff could present a prima facie case, Defendant has articulated a legitimate, nondiscriminatory reason for discharging Plaintiff with evidence meeting the standard mandated by the Supreme Court in *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. Despite repeated counseling and warnings, Plaintiff had failed to manage his territory properly and engaged in the specific conduct (inadequate response to customers) that he was told would result in his termination. The Court finds that discharge was a permissible response to Plaintiff's conduct. Plaintiff's discharge did not reflect discrimination based on race or age by Defendant.

16. Defendant's response "dissolves the prima facie case of unlawful discrimination and shifts the burden back to the Plaintiff to prove, at a heightened level of specificity, that the employer's reasons were mere pretext." *Smith v. Eastern Airlines, Inc.,* 651 F.Supp. 214, 219 (S.D.Tex.1986).

17. Plaintiff has not met this burden. Plaintiff has offered no evidence to show that Defendant's reasons for his discharge were pretextual; i.e., that "but for" either his race and/or age, he would not have been discharged. *See Jackson,* 654 F.2d at 1186. *See also McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983). Plaintiff has failed to meet his burden of proving that the Company's proffered explanation for this termination was a mere pretext for discrimination. It does not appear to the Court that either Plaintiff's race or his age was the determining factor for his termination.

■■ 18. Likewise, Plaintiff has failed to establish a prima facie case of discrimination for failure to promote based on his age or race. The Court finds that Plaintiff has failed to show that he was qualified for

the position of Marketing Manager or for any other management position, having exhibited substantial deficiencies in his performance as a sales representative.

19. Even if Plaintiff had presented a prima facie case, Defendant has articulated a legitimate, nondiscriminatory reason for not promoting Plaintiff with evidence meeting the standard mandated by the Supreme Court in *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094. Plaintiff was not promoted because his poor work performance did not qualify him for a promotion. *See Perry v. Prudential Insurance Co.,* 29 FEP Cases 1837, 1841 (S.D.Tex.1982).

20. Plaintiff has offered no evidence to show that Defendant's reason for not promoting him were pretextual; i.e., that "but for" either his race and/or his age he would have been promoted. *See Jackson,* 654 F.2d at 1186. Plaintiff has clearly failed to meet his burden of proving that the Company's proffered explanation for not promoting him was a mere pretext for discrimination. It does not appear to the Court that either Plaintiff's race or his age played any role in Plaintiff's not being awarded a promotion.

21. Plaintiff's attempt to rely on the continuing violation theory in order to allege discriminatory denial of promotions is erroneous for several reasons:

(1) Plaintiff is bound by the assertions in his Pretrial Order which specifically stated that Plaintiff is "limited to those acts of alleged discriminations" occurring within the limitations. *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983).

(2) Plaintiff neither raised or asserted the continuing violation theory in his Complaint. *O'Malley v. GTE Service Corp.,* 758 F.2d 818, 821 (2d Cir.1985).

(3) The continuing violation theory is usually reserved for a narrow class of cases in which a recurring policy is challenged. The doctrine is not appropriate to revive alleged discreet acts of discrimination outside the liability period.

22. The record shows that Defendant gave Plaintiff ample warning that his performance was deficient and that improvement was necessary. The evidence did not show that Plaintiff's termination was related to or caused by his race or age. The element of "causal connection" has not been documented in this case. Likewise, there is no evidence that Plaintiff's failure to receive a promotion was related to or caused by his race or age.

23. Plaintiff has failed to establish any basis for recovery or monetary or equitable relief.

24. Plaintiff has not shown any evidence of unlawful practice engaged in by Defendant; therefore, he is not entitled to a permanent injunction.

25. Any conclusion of law deemed to be a finding of fact is hereby adopted as such.

26. Judgment is entered for the Defendant.

27. The Court does not conclude that Plaintiff's action was frivolous, unreasonable, or without foundation. Consequently, attorneys fees will not be awarded to the prevailing Defendant. *See Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). Instead each party shall bear its own costs.

It is so ORDERED.

The Clerk shall file this Order and provide a true copy to counsel for all parties.