IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 19, 2008

Charles R. Fulbruge III
Clerk

No. 07-11048

J. LEE MILLIGAN, INC.

Plaintiff-Appellee

v.

CIC FRONTIER, INC.

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:06-CV-00207

Before SMITH, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

A jury found in favor of J. Lee Milligan, Inc. ("Milligan") in a breach of contract suit brought by Milligan against CIC Frontier, Inc. ("CIC"). CIC appeals on numerous grounds from the final judgment entered against it by the United States District Court for the Northern District of Texas. CIC's arguments on appeal do not warrant reversal, so we AFFIRM, except that because Milligan is the prevailing party on appeal, we VACATE the portion of the district court's order failing to award appellate attorneys' fees and REMAND

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

for the limited purpose of having the district court calculate Milligan's appellate attorneys' fees. We retain jurisdiction of this appeal pending the district court's compliance with our limited remand.

## I. BACKGROUND

Milligan is a highway construction contractor. CIC is an asphalt supplier. The parties had never done business together until the disputed transactions at issue in this suit. On November 1, 2005, Milligan and CIC entered into two contracts, Sales Order 1347 and Sales Order 1348. Under Sales Order 1347, CIC agreed to supply asphalt to Milligan at a fixed price of $375 per ton for a Texas Department of Transportation ("TxDOT") project in Gray County, Texas. Under Sales Order 1348, CIC agreed to supply asphalt to Milligan at a fixed price of $375 per ton for a TxDOT project in Armstrong County, Texas.

Each Sales Order consisted of four pages. The front page included in relevant part a payment term of "Net 10 Days," and a delivery term of "FOB MUSKOGEE." The last three pages of each contract contained general terms and conditions, including a provision for attorneys' fees. Both were prepared on CIC's standard sales order form.

On June 28, 2006, Milligan began drawing asphalt under Sales Order 1347. The charge for the initial shipment was $9,041.25. CIC delivered seven asphalt shipments under Sales Order 1347 totaling $64,372.50. CIC mailed Milligan an invoice dated June 30, 2006, requesting payment from Milligan for CIC's initial asphalt shipment. On July 10, 2006, Milligan mailed a check to CIC at its Muskogee office for $9,041.25. CIC received the check on July 12, 2006.

Milligan received a letter from CIC dated July 6, 2006, canceling Sales Order 1348 and informing Milligan that it would not supply the asphalt for the Armstrong County project. On July 11, 2006, Milligan received another letter from CIC invoking the force majeure clauses of both Sales Orders, and

"canceling all contracts and deliveries of [asphalt]." Milligan's counsel advised CIC that Milligan intended to treat CIC's actions as a breach of both Sales Orders, and that Milligan would offset payments it owed to CIC against the damages it sustained as a result of CIC's breach. Milligan also stopped payment on its check to CIC in the amount of $9,041.25 for the initial asphalt shipment under Sales Order 1347.

Milligan immediately began searching for another asphalt supplier for both TxDOT projects. Due to rapidly escalating asphalt prices, however, Milligan could not find a supplier that would agree to provide the asphalt at a fixed price. Milligan had to contract with Valero Marketing and Supply Company ("Valero") to supply asphalt for both TxDOT projects at "rack price," which fluctuates depending on market conditions. Milligan paid Valero $495 per ton for the asphalt necessary to complete the Gray County project that was originally the subject of Sales Order 1347.[1] Milligan had not yet needed asphalt for the Armstrong County project, originally the subject of Sales Order 1348, when this case went to trial.

Milligan filed suit against CIC on August 4, 2006, alleging breach of contract under both Sales Orders. CIC denied breaching either Sales Order, and it counterclaimed for the unpaid amounts on the asphalt delivered under Sales Order 1347. The parties stipulated that Oklahoma law applied. After Milligan finished putting on its case-in-chief, CIC moved for judgment as a matter of law and demanded that Milligan take nothing. The district court denied CIC's motion. The jury returned a verdict in favor of Milligan, and awarded Milligan

---

[1] When Milligan contracted with Valero, the rack price was $470 per ton. However, Valero would only sell asphalt to Milligan for the Gray County project at $495 per ton. Milligan agreed to this price because the Gray County project had already commenced, Milligan needed the asphalt immediately, and no other suppliers were available.

$205,474.57 in damages for breach of Sales Order 1347 and $129,937.50[2] in damages for breach of Sales Order 1348. The district court also awarded Milligan $118,124.50 in attorneys' fees and $5,042.12 in costs. CIC appeals the final judgment entered against it, totaling $458,560.69. CIC raises numerous issues on appeal, only some of which warrant any discussion and, accordingly, they are addressed below.

## II. DISCUSSION

### A. "Net 10 Days" and Sales Order 1347

CIC argues that, as a matter of law, it was justified in canceling Sales Order 1347 because Milligan failed to comply with the payment term "Net 10 Days." CIC contends that "Net 10 Days" was neither ambiguous nor in need of explanation; rather, the term clearly required Milligan to have payment in Muskogee, Oklahoma ten days after the date of the invoice. Consequently, according the district court erred by admitting what CIC termed extrinsic evidence to explain the meaning of "Net 10 Days," and by denying CIC's motion for judgment as a matter of law concerning its alleged breach of Sales Order 1347.

Whether a contract is ambiguous is a conclusion of law that this court reviews de novo. Ham Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 458 (5th Cir. 1995). A contract term is ambiguous if "'it is reasonably susceptible to at least two different constructions' such that 'reasonably intelligent men[ ] on reading the contract would honestly differ as to its meaning.'" Otis Elevator Co. v. Midland Red Oak Realty, Inc., 483 F.3d 1095, 1102 (10th Cir. 2007) (applying Oklahoma law) (quoting Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545-46 & n.19 (Okla. 2003)). In the present case, the term "Net 10 Days" was

---

[2] Milligan calculated its damages under Sales Order 1348 as the difference in the total cost of the asphalt at rack price ($470 per ton) and the total cost of the asphalt at the fixed price stated in the initial contract ($375 per ton), totaling $164,375.75. As noted above, the jury awarded only $129,937.50.

neither defined in nor explained by the terms of Sales Order 1347, leaving it reasonably susceptible to varying interpretations. Thus, we conclude that "Net 10 Days," as used in Sales Order 1347, is an ambiguous term. When a contract term is ambiguous, the contract's meaning may be determined in light of all extrinsic evidence. See OKLA. STAT. ANN. tit. 12A § 2-202 (2007); see also Paragon Res., Inc. v. Nat'l Fuel Gas Distrib. Corp., 695 F.2d 991, 996 (5th Cir. 1983).[3] Accordingly, the district court properly admitted extrinsic evidence to explain the meaning of the term "Net 10 Days."[4]

In light of the properly admitted extrinsic evidence, we turn to the issue of whether the district court properly denied CIC's motion for judgment as a matter of law. We review de novo a district court's ruling on judgment as a matter of law. Jordan v. Ector County, 516 F.3d 290, 294 (5th Cir. 2008). In an action tried to a jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence supporting the jury's verdict, and should be granted only if the facts so strongly favor the movant that a rational jury could not reach a contrary verdict. Id. Here, the evidence showed that in all of Milligan's dealings with other asphalt suppliers, putting a check in the mail on the date payment was due constituted timely payment. Darrell Bezecny, a former CIC employee, testified that putting a check in the mail ten days after the invoice date was considered timely in the ordinary course of CIC's business.

---

[3] Because the contract at issue involves a transaction for the sale of goods, the Oklahoma Uniform Commercial Code ("U.C.C.") governs its interpretation. OKLA STAT. ANN. tit. 12A § 2-105 (2007); OKLA. STAT. ANN. tit. 12A § 2-101 (2004).

[4] Milligan argued that this evidence constituted "usage of trade" evidence under the Oklahoma U.C.C. Section 2-202 of the Oklahoma U.C.C. allows usage-of-trade evidence without a finding of ambiguity. CIC argues that this evidence was not usage-of-trade evidence; rather, CIC contends that this evidence was parol evidence, and consequently, it was inadmissible. However, because we conclude that the term "Net 10 Days" is ambiguous, relevant extrinsic evidence was admissible to determine the meaning of Sales Order 1347 and its payment terms. As a result, we need not decide if the evidence constituted "usage of trade" within the meaning of the Oklahoma U.C.C. See Paragon Res., 695 F.2d at 996.

This evidence is sufficient to support the conclusion that Milligan complied with the term "Net 10 Days" by placing payment in the mail before the tenth day after the date of the invoice. Thus, CIC breached Sales Order 1347 when it subsequently refused to supply the contracted-for asphalt. The district court did not err by denying CIC's motion for judgment as a matter of law.

B. Calculation of Damages for Breach of Sales Order 1348

In situations such as this, CIC contends that the Oklahoma U.C.C. gives aggrieved buyers two mutually exclusive remedies for breach of contract. Either the buyer may "cover" under OKLA. STAT. ANN. tit. 12A § 2-712 (2004) and measure damages as the cost of cover minus the contract price,[5] or the buyer may recover damages for nondelivery under OKLA. STAT. ANN. tit. 12A § 2-713 (2004), which calculates damages as the market price on the date of breach minus the contract price.[6] CIC contends that there are two significant differences between the remedies articulated in § 2-712 and § 2-713: (1) the price

[5] Section 2-712 sets forth the "cover" remedy as follows:
(1) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.

(2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (Section 2-715), but less expenses saved in consequence of the seller's breach.

(3) Failure of the buyer to effect cover within this section does not bar him from any other remedy.

[6] Section 2-713 reads as follows:
(1) Subject to the provisions of this article with respect to proof of market price (Section 2-723), the measure of damages for nondelivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this article (Section 2-715), but less expenses saved in consequence of the seller's breach.

(2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival.

used as the minuend (cover or market); and (2) the time at which damages are measured (date of cover or date of breach). At oral argument, CIC represented to this court that to measure damages "under 2-712, . . . that's got to be at the time of the cover." In both its written and oral arguments, CIC contends that Milligan "covered" on July 12, 2006, when it entered into the "rack price" contract with Valero. Nonetheless, CIC also contends that the measure of Milligan's damages is properly calculated under § 2-712 as the "rack price of asphalt during the time period when Milligan expected to use the asphalt" for the Armstrong County project, i.e., the summer of 2007, minus the contract price. At the time of trial, the summer of 2007 was in the future, and no asphalt had been purchased to replace that which was the subject of Sales Order 1348. CIC challenges the jury instruction on this point and further argues that it was entitled to judgment as a matter of law because Milligan presented no evidence regarding the cover price.

This court reviews challenges to jury instructions for abuse of discretion. Dahlen v. Gulf Crews, Inc., 281 F.3d 487, 494 (5th Cir. 2002). Reversal is appropriate only "'if the charge as a whole creates a substantial doubt as to whether the jury [was] properly guided in its deliberations.'" Id. (quoting C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 700 (5th Cir. 2001)). Even if the jury instructions were erroneous, "'we will not reverse if we determine, based on the entire record, that the challenged instruction could not have affected the outcome of the case.'" Id. (quoting Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir. 1997)). As previously noted, we review de novo a district court's ruling on a motion for judgment as a matter of law. Jordan, 516 F.3d at 294.

Assuming arguendo that CIC's argument is correct and Milligan did indeed "cover" by entering into the July 12 contract with Valero, then, under CIC's contention presented at oral argument, July 12, 2006 would be the date of cover for damages purposes. The evidence at trial showed that on July 12, 2006,

the rack price was $470 per ton, Milligan calculated its damages under Sales Order 1348 using the rack price of $470 per ton, and ultimately the jury awarded damages in an amount even lower than that which Milligan requested.[7] The evidence at trial also showed that asphalt prices were rising rapidly, hence Milligan's inability to contract for replacement asphalt at any price other than rack price. At bottom, applying the evidence to CIC's proposed method of calculating damages, CIC would undoubtedly owe more to Milligan for CIC's breach of Sales Order 1348. Thus, the error, if any, was harmless as to CIC.

If, instead, as CIC appears to contend in its brief, the "time of cover" was some time in the future when Valero finally delivered the asphalt to Milligan, then neither "cover" nor even partial cover had occurred as of the date of trial. Thus, the argument that Milligan had irrevocably elected remedies by covering[8] would be factually untrue, and Milligan was free to elect a "market value" remedy.[9] Because the district court's instruction would not have affected the outcome of the case, we find no reversible error in the district court's jury instruction to calculate damages under § 2-713. Similarly, the evidence supports at least the amount of damages Milligan recovered, under either approach.

## C. Attorneys' Fees Incurred on Appeal

---

[7] Indeed, the evidence showed that Valero comprised the entire market for the particular substitute asphalt Milligan was seeking, and therefore the $495 per ton that Milligan paid for the asphalt needed to complete the Gray County project (formerly the subject of Sales Order 1347) was the market price. Had the jury actually calculated Milligan's damages as the market price minus the contract price, its award would have been higher, not lower, than the amount of damages Milligan requested.

[8] CIC relies on the following comment for its argument that "covering" constitutes an irrevocable election of remedies: "The present section provides a remedy which is completely alternative to cover under the preceding section and applies only when and to the extent that the buyer has not covered." U.C.C. § 2-713 cmt. 5 (2004) (emphasis added) (adopted in full by § 2-713 of the Oklahoma U.C.C.).

[9] To be clear, we do not decide whether Milligan indeed covered because that determination is unnecessary to our ruling.

In diversity cases, a fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case. Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002). In the present case, the parties agreed at trial that Oklahoma law applied to the substantive issues, and therefore Oklahoma law also governs the issue of attorneys' fees.

Oklahoma follows the "American rule" that each party should bear the costs of his or her own legal representation in the absence of a statute or a specific contractual provision that provides otherwise. Stump v. Cheek, 179 P.3d 606, 612-13 (Okla. 2007). In both Sales Orders 1347 and 1348, the express terms provide that in "any action or proceeding" the prevailing party is entitled to attorneys' fees. The district court awarded Milligan $118,124.50 in attorneys' fees, which did not include any fees that would be incurred on appeal. Because Milligan is the prevailing party on appeal, it is entitled to its attorneys' fees incurred on appeal. Accordingly, we vacate the portion of the district court's order failing to award appellate attorneys' fees and remand to the district court for the limited purpose of having the district court calculate the attorneys' fees incurred by Milligan on appeal. See Wheeler v. City of Columbus, 686 F.2d 1144, 1154 (5th Cir. 1982). "We retain jurisdiction of this appeal pending the district court's compliance with our limited remand." Id.

## III. CONCLUSION

In sum, the term "Net 10 Days" was an ambiguous term and the district court did not err by admitting extrinsic evidence to determine its meaning. The evidence was sufficient to support the jury's conclusion that Milligan complied with the payment terms and that, consequently, CIC breached Sales Order 1347 by failing to supply the contracted-for asphalt. With respect to Sales Order 1348, we hold that any error in the jury instructions was harmless as to CIC. Because Milligan is the prevailing party, Milligan is entitled to the attorneys' fees it incurred on this appeal.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED; JURISDICTION RETAINED.